# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

BRIAN L. KINTER, : Case No. 3:12-cv-85

    Plaintiff,

                                          District Judge Thomas M. Rose
vs. : Magistrate Judge Michael J. Newman

JENISE L. BOLTZ, *et al.*,

    Defendants. :

___

## REPORT AND RECOMMENDATION[1] THAT PLAINTIFF'S CLAIMS BE DISMISSED AND ORDER CONCERNING DEFENDANT BOLTZ'S COUNTERCLAIMS
___

       This is a *pro se* action arising from a contentious family dispute in Champaign County, Ohio. Plaintiff is a father who was denied custody of one or more of his children. The appropriate course would have been for Plaintiff to challenge that decision in the Champaign County Court or file an appeal to the appropriate state court. Instead, Plaintiff seeks to collaterally attack the decision by filing a § 1983 case here.[2] Because such collateral attacks are forbidden, *see infra*, the Court recommends dismissal.

       Plaintiff has named many defendants including Jenise Boltz ("Boltz"), the mother of his children, the Ohio Attorney General, and numerous individuals and entities involved in his child custody proceedings. In turn, Boltz, through counsel, has filed counterclaims against Plaintiff. *See* doc. 39.

___

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.
[2] Plaintiff also seeks declaratory relief that his constitutional rights were violated pursuant to 28 U.S.C. § 2201.

Multiple defendants have moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6): the guardian *ad litem* for Plaintiff's children in the custody case, Linda MacGillivray (doc. 10); the two judges, Judge Newlin and Judge Reisinger (doc. 21); and Magistrate Lancaster, the Champaign County Common Pleas Court, and the Champaign County Child Support Enforcement Agency (doc. 22). [3] *Pro se* Plaintiff filed memoranda in opposition (docs. 17, 29, 34), and Defendants filed reply memoranda (docs. 35, 36). Plaintiff's Amended Complaint and Opposition Memoranda have both been liberally construed in his favor. *See infra*.

## I. Background

Plaintiff Brian Kinter ("Kinter") has three children (one daughter and two sons) with Defendant Jenise Boltz ("Boltz"). Amended Complaint (doc. 4) ¶ 31. It does not appear that Kinter and Boltz were married. *See id.* In February 2007, Boltz allegedly moved from Ohio to Pennsylvania, taking their three children with her. *Id.* ¶ 33. On May 17, 2007, Kinter filed for sole custody of their children in the Champaign County Court of Common Pleas, Domestic Relations-Juvenile-Probate Division. *Id.* ¶ 34. Since then, a custody battle has ensued between Kinter and Boltz in the Champaign County Court. *See id.* ¶¶ 35-101.

Kinter claims the Defendants deprived him of his constitutional rights with respect to his parental and visitation rights. *See id.* First, under § 1983, he requests preliminary injunctive relief "to prohibit further actions by the Defendants that implicate the Plaintiff's fundamental rights and autonomous relationship with his children." *Id.* ¶ 108. Second, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, he requests declaratory relief with respect to

---

[3] There are generally two types of Fed. R. Civ. P. 12(b)(1) motions: facial attacks and factual attacks. *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009). The dismissal motions now before the Court present facial attacks as they challenge the sufficiency of the pleading itself; they do not ask the Court to make factual findings. *See DLX, Inc. v. Ky.*, 381 F.3d 511, 516 (6th Cir. 2004); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Therefore, the Court must accept all of Kinter's allegations as true, and construe them in the light most favorable to him. *Ritchie*, 15 F.3d at 598.

his due process rights, and challenges the constitutionality of Ohio Rule of Civil Procedure 75(N) and Ohio Revised Code § 3109.04. *Id.* ¶¶ 109-46. Third, under § 1983, he requests actual and punitive damages in the amount of one hundred million dollars ($100,000,000.00).[4] *Id.* ¶¶ 149-50.

## II. *Rooker-Feldman* Doctrine

The Court notes, as a preliminary matter, that this case involves a child custody dispute -- an issue historically left to the states -- and federal courts should not intervene in such matters. *Elk Grove United Sch. Dist. v. Newdow*, 542 U.S. 1, 12-13 (2004). "A federal court is not the proper forum for child custody proceedings, especially where State remedies are available." *Castorr v. Brundage*, 674 F.2d 531, 535 (6th Cir. 1982).

This case should be dismissed because Kinter is impermissibly attempting to collaterally attack a state court judgment under § 1983. *See Buck v. Ohio Court of Appeals*, 554 F.2d 766, 767 (6th Cir. 1977). Under the *Rooker-Feldman* doctrine, a federal district court does not have the authority to engage in appellate review of state court proceedings, even when the plaintiff is challenging the constitutionality of the those proceedings. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), the United States Supreme Court clarified that the *Rooker-Feldman* doctrine limits district courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284; *see also Coles v. Granville*, 448 F.3d 853, 857-58 (6th Cir. 2006). Thus, the *Rooker-Feldman* doctrine deprives a district court of subject matter jurisdiction "when a

---

[4] Plaintiff also makes vague allegations concerning 18 U.S.C. § 241 and § 242. However, these are criminal statutes and do not provide a basis for civil liability. *Krajicek v. Justin*, No. 98-1249, 1999 U.S. App. LEXIS 5383, at *4 (6th Cir. Mar. 23, 1999).

plaintiff complains of injury from the [state court] judgment itself." *Coles*, 448 F.3d at 858.

The *Rooker-Feldman* doctrine divests this Court of jurisdiction over Kinter's claims. Kinter alleges in his Amended Complaint that Defendants caused unfavorable results in the child custody proceedings. However, there is no indication in the record that he appealed the state court rulings to the appropriate Ohio Court of Appeals. Rather, he decided to contest his state child custody proceedings in this Court. This is precisely the type of prohibited collateral attack to which *Rooker-Feldman* applies. *Cf. Ryan v. Ford Motor Credit Co.*, No. 2:08-cv-36, 2009 U.S. Dist. LEXIS 15359, at *13-19 (S.D. Ohio Feb. 27, 2009).

The Court acknowledges that Kinter attempts to make a general challenge to the constitutionality of Ohio Rule of Civil Procedure 75(N) and Ohio Revised Code § 3109.04.[5] *See* doc. 4 ¶¶ 14, 29-30, 115-20, 129, 135-36, 138. However, Kinter's broad assertions do not save his claims from the *Rooker-Feldman* doctrine. *See id.* A careful reading of his Amended Complaint reveals that he is only challenging those statutes as they were applied to him. *See* doc. 4; *cf. Patmon v. Mich. Supreme Court*, 224 F.3d 504, 510 (6th Cir. 2000) (finding that the context of the plaintiff's complaint showed that he was not truly presenting a facial constitutional challenge to a state law, but was really challenging its application to him).

Moreover, the constitutionally of the same Ohio rule and statute have previously been upheld by federal courts. The Sixth Circuit Court of Appeals held that Ohio Rev. Code § 3109.04 "is not unconstitutional on its face because it clearly possess[es] a rational nexus to the state government's important interest in seeking to secure the safety of its minor citizens." *Evans v. Yarbrough*, No. 00-3588, 2000 U.S. App. LEXIS 33384, at *6-7 (6th Cir. Dec. 13, 2000). When

---

[5] This is notable because the *Rooker-Feldman* doctrine does not apply to a general challenge to the constitutionality of a state law. *See Carter v. Burns*, 524 F.3d 796, 798-99 (6th Cir. 2008). However, the doctrine does apply to an "as-applied" challenge – *i.e.,* a plaintiff's claim that a state law was unconstitutionally applied to him or her. *See id.*

4

the same plaintiff later attempted to challenge the facial constitutionality of Ohio R. Civ. P. 75(N), the Court rejected that claim – finding "it is not unconstitutional as it addresses a matter of procedure and does not deprive a party of its right to be heard on appeal." *Evans v. Franklin Cnty. Court of Common Pleas*, 184 F. Supp. 2d 707, 712 (S.D. Ohio 2001).

Further, although some Defendants -- Jenise Boltz, Michael Edwards, and the Ohio Attorney General -- have not filed dismissal motions, the Court finds the same reasoning applies to the claims against them, and that the *Rooker-Feldman* bars such claims. In his claims against these Defendants, Kinter is likewise attempting to collaterally attack the state court proceedings. *See* doc. 4. Therefore, the Court further recommends a *sua sponte* dismissal of the claims against Defendants Jenise Boltz, Michael Edwards, and the Ohio Attorney General. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"); *see also Franzel v. Kerr Mfg. Co.*, 959 F. 2d 628, 630 (6th Cir. 1992).

### III. Declaratory Relief Claims

Having concluded that, under *Rooker-Feldman* doctrine, the Court lacks subject matter jurisdiction over Kinter's § 1983 claims, *see supra*, the Court finds that it does not have the authority over Plaintiff's remaining claims seeking declaratory relief. The Court does not jurisdiction to issue a general declaration that Ohio Revised Code 75(N) and Ohio Revised Code § 3109.04 are unconstitutional because there would be no justiciable case or controversy, as required by Article III of the Constitution. *Galluzzo v. Champaign Cnty. Court of Common Pleas*, 168 F. App'x 21, 25-26 (6th Cir. 2006). In a similar case where the plaintiff sought only a declaration that the same Ohio rule and statute at issue in this case were unconstitutional, the Sixth Circuit explained as follows:

> It is clear to us that [the plaintiff's] lawsuit is an inappropriate means to challenge Ohio's parental custody laws and procedures. Galluzo has dropped all of his

5

fact-based claims, and seeks only a general declaration that the Ohio statute and Rule are unconstitutional. He is not petitioning the federal court for custody of his children. Rather, he simply wants a favorable ruling on a "collateral legal issue," upon which (we presume) he wishes to pursue custody in a separate proceeding.

If [the plaintiff] believes that his constitutional rights have been violated, he may petition the Ohio courts for a modification of the original decree awarding parental rights. O.R.C. § 3109.04(E). Those courts will surely provide [the plaintiff] with an adequate forum to argue constitutional issues presented by this case, just as they would have in 1993, when first presented with this custody dispute.

*Id.* As in *Galluzzo*, this Court likewise does not have jurisdiction to simply make a general declaration that the statutes are unconstitutional.

## IV. Claims Against Judicial Officers

Additionally, as argued in the motions to dismiss, many Defendants are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6). *See* doc. 10, 21, 22. To survive a Rule 12(b)(6) motion to dismiss, Kinter's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Further, although *pro se* pleadings are "to be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), *pro se* plaintiffs must still satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Courts are not compelled to conjure up facts to support conclusory allegations. *See id.*

Kinter's claims against three judicial officers in the Champaign County Common Pleas Court, Domestic Relations-Juvenile-Probate Division, who presided over his child custody case --

6

Judge Newlin, Judge Reisinger and Magistrate Lancaster (collectively the "Judicial Officers") -- should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because those judicial officers are absolutely immune from liability.

Kinter's Amended Complaint makes the following allegations concerning Judge Newlin:

1. On April 15, 2008, a magistrate terminated Kinter's visitation rights with his daughter, even though, according to Kinter, there was no finding of wrongdoing. *Id.* ¶ 62. Judge Newlin overruled that Order on April 24, 2009. *Id.* ¶ 63.

2. On May 7, 2009, Kinter filed a motion requesting an extension of time to file supplemental objections to a magistrate's decision regarding custody. *Id.* ¶ 69. Judge Newlin denied his motion, and stated "if Mr. Kinter is able to secure another attorney at some time, the Court would entertain his/her reasonable requests." *Id.* ¶ 70; *see also* doc. 29-2. Kinter allegedly paid $1,500 to secure an attorney. *Id.* ¶ 71. Judge Newlin permitted Kinter's new attorney to file supplemental objections, and overruled the objections. *Id.* ¶¶ 71-73. Kinter alleges that Judge Newlin erroneously found that the supplemental objections did not make specific references to the transcript. *Id.* ¶ 73.

Kinter's Amended Complaint makes the following allegations concerning Judge Reisinger:

1. On August 27, 2010, Kinter was ordered to appear in court for non-payment of child support. *Id.* ¶ 74. At that time, he claims that he requested appointment of counsel due to his indigent status, but a magistrate determined that he voluntarily waived his right to counsel. *Id.* Judge Reisinger overruled the magistrate's decision, finding that Kinter had not waived his right to counsel. *Id.* ¶ 75. Kinter requested a hearing on his indigent status, but Judge Reisinger denied that request. *Id.* ¶¶ 75-76. On December 20, 2010, Jude Reisinger determined that Kinter was

indigent. *Id.* ¶ 81. However, on February 14, 2011, Judge Reisinger filed an entry finding Kinter was no longer indigent. *Id.* ¶ 84.

2. Judge Reisinger ordered the reinstatement of Kinter's driver's license on December 17, 2010, after it had been suspended for failure to pay child support. *Id.* ¶¶ 77-79.

3. Judge Reisinger issued an Order finding that Boltz never interfered with Kinter's visitation rights. *Id.* at ¶ 86.

4. Judge Reisinger held an *in camera* interview of the children on November 22, 2011 over Kinter's objections, and refused to allow counsel to be present. *Id.* ¶ 95.

5. On March 27, 2012, Judge Reisinger stated in court that she had previously filed a recusal Order on February 20, 2009, and issued an Order prohibiting Kinter from speaking publicly about the case. *Id.* ¶ 97.

6. Judge Reisinger ordered the record -- prior to May 23, 2011 -- be sealed. *Id.* ¶ 98.

7. Judge Reisinger scheduled the next attorney conference for October 2012, at which time Kinter would be apart from his children for fifteen months. *Id.* ¶ 100.

Kinter's Amended Complaint makes the following allegations concerning Magistrate Lancaster:

1. On July 9, 20007, Magistrate Lancaster issued an order designating Boltz as the sole custodian of Kinter and Boltz's three children, and therefore denying Kinter custody of his children. *Id.* ¶¶ 43, 49-51. Kinter claims Magistrate Lancaster did not apply the correct evidentiary standard, and failed to find that Kinter was an unfit parent. *Id.* ¶¶ 44-45.

2. Magistrate Lancaster removed the guardian *ad litem* appointed for the three children based upon an attorney's motion. *Id.* ¶ 55.

3. On April 8, 2008, Magistrate Lancaster conducted an *in camera* interview with two

of Kinter's three children.  *Id.* ¶ 61.

4. Magistrate Lancaster terminated Kinter's visitation rights with his daughter, even though, according to Kinter, there was no finding of wrongdoing.  *Id.* ¶ 62.

5. On February 9, 2009, Magistrate Lancaster issued an Order designating Boltz as the children's sole custodian.  *Id.* ¶ 66.

6. On August 27, 2010, Kinter was ordered into court for alleged non-payment of child support.  *Id.* ¶ 74.  Magistrate Lancaster denied his request for appointment of counsel.  *Id.*  Kinter alleges that Magistrate Lancaster "willfully 'lied' in stated in her decision that, 'Mr. Kinter was advised of his right to counsel and voluntarily waived that right.'"  *Id.*

Judges are entitled to absolute immunity from damages suits based on their judicial acts even if they act erroneously or in bad faith.[6]  *Mireles v. Waco*, 502 U.S. 9, 9-11 (1991).  Judicial immunity can only be overcome by a showing that the judge acted without jurisdiction, or that the judge is liable for a "non-judicial" act.  *Barnes v. Winchell*, 105 F.3d 1111, 1115-16 (6th Cir. 1997).  Neither exception is applicable to the claims against the Judicial Officers.

Kinter has not alleged that Judges Newlin or Reisinger lacked proper jurisdiction; nor is there reason for the Court to find otherwise.  Further, accepting Kinter's allegations as true -- *i.e.,* that Judges Newlin and Reisinger failed to follow proper procedure and their rulings were erroneous -- it is clear that the Judges were acting at all times in their judicial capacities.  *Cf. Riser v. Schnieder*, 37 F. App'x 763, 763-64 (6th Cir. 2002).  Accordingly, the Court finds that Judges Newlin and Reisinger are immune from Kinter's damages claim.

Kinter argues that Magistrate Lancaster acted "in clear absence of jurisdiction" because she allegedly acted maliciously and knowingly violated Kinter's constitutional rights.  *See* doc. 34 at

---

[6] Judicial absolute immunity applies equally to state court magistrates.  *Planey v. Mahoning Cnty. Court of Common Pleas*, 916 N.E.2d 537, 541 (Ohio Ct. App. 2009).

PageID 278. However, this argument is misplaced because judicial immunity is absolute: "judicial immunity applies to acts performed maliciously and corruptly as well as acts performed in bad faith or with malice." *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004). Accordingly, the absence-of-jurisdiction exception applies "only when the matter upon which [the judicial officer] acts is clearly outside the subject matter of the court over which [she] presides." *Id.* at 623. Here, Magistrate Lancaster was presiding over a case within her jurisdiction, and the "absence of jurisdiction" exception to judicial immunity does not apply.

Further, Kinter's argument that Magistrate Lancaster's acts were non-judicial is likewise unpersuasive. All of Kinter's allegations involve Magistrate Lancaster making judicial decisions in the child custody case. Thus, Magistrate Lancater engaged in acts normally performed by a magistrate, and acted at all times in her judicial capacity. *See id.* at 617-23; *cf. Riser*, 37 F. App'x at 763-64. Accordingly, the Court finds that Magistrate Lancaster is absolutely immune from Kinter's damages claim.

Additionally, Kinter has failed to state a claim for injunctive and declaratory relief against the Judicial Officers. In order to obtain equitable relief, Kinter must demonstrate that there was no adequate remedy at law and there exists a serious risk of irreparable harm to him personally. *See Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984). Kinter has an adequate remedy at law to address the Judicial Officers' alleged errors: he may appeal the Champaign County Court's rulings to the appropriate Ohio Court of Appeals, or he may seek an extraordinary writ, such as a writ of *mandamus* from that Ohio appellate body. *Cf. Newsome v. Merz*, 17 F. App'x 343, 345 (6th Cir. 2001); *Burnham v. Wilkinson*, No. 3:01-cv-359, 2003 U.S. Dist. LEXIS 10038, at *33-34 (S.D. Ohio Feb. 7, 2003). Accordingly, Kinter is not entitled to declaratory or injunctive relief against the Judicial Officers.

## V. Claims Against Related Entities

### A. Guardian *Ad Litem* Linda MacGillivray

Kinter has failed to state a claim upon which relief can be granted against Linda MacGillivray -- the guardian *ad litem* for Kinter's children. Like judges, guardian *ad litems* acting in their official capacities as advocates for children are integral to the judicial proceedings and therefore entitled to absolute immunity. *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984). In this case, Kinter's claims against Linda MacGillivray relate solely to her guardian *ad litem* functions. Kinter asserts: "Defendant MacGillivary [sic] failed to properly perform her duties as GAL aiding the court in denying the Plaintiff his right to custody and association with his children." Doc. 4 ¶ 56. Accordingly, Linda MacGillivray is immune from Kinter's § 1983 suit. *Cf. Catudal v. Browne*, No. 2:12-cv-197, 2012 WL 1068530, at*11-12 (S.D. Ohio Mar. 29, 2012).

### B. The Champaign County Court

Kinter has also failed to state a claim against the Champaign County Court of Common Pleas, Domestic Relations-Juvenile-Probate Division. An Ohio court cannot be sued absent express statutory authority.[7] *Malone v. Court of Common Pleas*, 45 Ohio St. 2d 245, 248 (1976); *see also Dalton v. Bureau of Criminal Identification & Investigation*, 530 N.E.2d 35, 36 (Ohio Ct. App. 1987) (finding that the State of Ohio has not waived its sovereign immunity with respect to its courts). Thus, because Kinter has not cited Ohio law authorizing a lawsuit against an Ohio state court, the Court concludes that the Champaign County Common Pleas Court cannot be sued, and should therefore be dismissed as a defendant in this case. *Cf. Back v. Court of Common Pleas*, No. 1:09-cv-554, 2010 U.S. Dist. LEXIS 112602, at *5 (S.D. Ohio Sept. 2, 2010); *Burton v. Hamilton Cnty. Juvenile Court*, No. 1:04-cv-368, 2005 U.S. Dist. LEXIS 39775, at *12-13 (S.D.

---

[7] Pursuant to Fed. R. Civ. P. 17(b)(3), Ohio law controls in deciding this issue. Fed. R. Civ. P. 17(b) (3) provides that the law of the state in which the district court is located governs whether a particular governmental entity can be sued in federal court.

Ohio Dec. 5, 2005).

### C. The Champaign County Child Enforcement Agency

Further, Kinter has failed to state a claim upon which relief can be granted against the Champaign County Child Enforcement Agency ("Champaign County CSEA"). In his Amended Complaint, Kinter alleges that the Champaign County CSEA initiated the suspension of his driver's license for failure to pay child support without notifying him. Doc. 4 ¶ 78. He alleges that he first learned of his suspension on December 1, 2009 when he was stopped by a police officer for driving under suspension. *Id.* ¶ 77. His driver's license was reinstated by Court Order on December 17, 2010, but he allegedly still owes a $185 reinstatement fee. *Id.* ¶ 80. Construing his *pro se* pleading liberally, it appears that he brings his claim pursuant to 42 U.S.C. § 1983 for a violation of his Fourteenth Amendment right to procedural due process.

Kinter is not entitled to relief under § 1983 based on these alleged facts. Because the Champaign County CSEA is a political subdivision, it is only liable under § 1983 when the alleged federal or constitutional violation stemmed from its official agency policy or practice. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Accordingly, "to satisfy the *Monell* requirements, a plaintiff must 'identify the policy [or custom], connect the policy to the [government entity] itself and show that the particular injury was incurred because of the execution of the policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wisom*, 820 F.2d 170, 176 (6th Cir. 1987)). Kinter's Amended Complaint does not allege that the Champaign County CSEA has a custom or policy of initiating proceedings to suspend the driver's licenses of child support debtors without comporting with procedural due process requirements. Rather, he complains that the Champaign County CSEA improperly initiated the proceedings to suspend his license in his case only. *See* doc. 4 ¶¶ 77-80. Therefore, Kinter has failed to plead sufficient

facts to state a plausible § 1983 claim against the Champaign County CSEA, and the claims against the agency should be dismissed. *Cf. Castanias v. Lipton*, No. 1:11-cv-00296, 2012 U.S. Dist. LEXIS 55569, at *22-24 (S.D. Ohio Apr. 20, 2012); *Tansksley v. Franklin Cnty.*, No. 2:11-cv-38, 2011 U.S. Dist. LEXIS 118523, at *14-16 (S.D. Ohio Oct. 13, 2011); *McCabe v. Mahoning Cnty. Children Serv. Bd.*, No. 4:09-cv-1931, 2010 U.S. Dist. LEXIS 86075, at *19-22 (N.D. Ohio Aug. 20, 2010).

## VI. Recommendation

Based upon the foregoing analysis, the Court **RECOMMENDS** that the three pending dismissal motions of Attorney Linda MacGillivray (doc. 10); Judges Newlin and Reisinger (doc. 21); and Magistrate Lancaster, the Champaign County Common Pleas Court, and the Champaign County Child Support Enforcement Agency (doc. 22) each be **GRANTED**; and all claims against Defendants Jenise Boltz, Attorney Michael Edwards, and the Ohio Attorney General be **DISMISSED** *sua sponte*.

The Court **FUTHER RECOMMENDS** that, because any appeal of this Report and Recommendation would not be taken in good faith, if Plaintiff appeals this decision to the Sixth Circuit Court of Appeals, he be denied leave to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

This analysis leaves only Defendant Boltz's counterclaims remaining in this case. With respect to those counterclaims, Boltz shall advise the Court within **FIFTEEN (15) DAYS** as to whether she intends to proceed on the merits of these counterclaims. If she chooses to voluntarily dismiss them, she shall file a Notice of Voluntary Dismissal, in compliance with Fed. R. Civ. P. 41(a), within **FIFTEEN (15) DAYS** from the date of this Order.

July 12, 2012            s/ **Michael J. Newman**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).